UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-23852-CIV-ALTONAGA/Goodman

**MARK JOHN YOUNG**,

Plaintiff,

v.

**MIAMI-DADE COUNTY**, *et al.*,

Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants, Miami-Dade County (the "County"), Leon Glover, Rickey Walker, Leonardo Diaz, Collesta Thompson, Calvin Jones, Gina Cox, and Elvin Johnson's[1] Motion to Dismiss [ECF No. 112], filed on October 20, 2020.  Plaintiff,[2] Eather Jennett Lacy, as personal representative of Young's estate, filed a Corrected Response[3] ("Response") [ECF No. 123] to the Motion, to which Defendants filed a Reply [ECF No. 126].  The Court has carefully considered the Second Amended Complaint and supporting exhibits (*see* [ECF Nos. 108-1–108-6]), the parties' written submissions, the record, and applicable law.  For the following reasons, the Motion is granted in part and denied in part.

_____

[1] The individual Defendants are identified as Officer Glover, Officer Walker, Officer Diaz, Officer Thompson, Officer Jones, Corporal Cox, and Lieutenant Johnson (the "Co-Defendants" or together with the County, "Defendants").

[2] On May 22, 2020, Plaintiff's counsel filed a Suggestion of Death Upon the Record [ECF No. 98] as to Plaintiff, Mark John Young ("Young"), and Eather Jenett Lacy, who was appointed as the personal representative of the estate, replaced Young as the formal Plaintiff in this matter (*see* Second Amended Complaint ("SAC") [ECF No. 108] ¶ 1).

[3] Plaintiff's initial Response in Opposition to Defendants' Motion to Dismiss the Second Amended Complaint [ECF No. 120] exceeded the 30-page limitation provided for in the Court's October 19, 2020 Order [ECF No. 110].  On November 5, 2020, the Court entered an Order [ECF No. 122] granting Plaintiff's Motion for Leave to File Corrected Response in Opposition to Motion to Dismiss Second Amended Complaint [ECF No. 121], and Plaintiff filed her Corrected Response in compliance with that Order.

# I.     BACKGROUND

This action arises out of an alleged unprovoked assault by correctional officers on Young at the Miami-Dade County Pretrial Detention Center (the "Detention Center"), and Defendants' alleged subsequent failure to provide reasonable medical care.  (*See generally* SAC).  The Second Amended Complaint's factual allegations are substantively identical to the allegations in the Complaint [ECF No. 1], which the Court recounted in detail in its decision on Defendants' initial Motion to Dismiss [ECF No. 64].  *See Young v. Miami-Dade Cnty.*, No. 16-23852-Civ, 2020 WL 2110012, at *1–3 (S.D. Fla. Apr. 21, 2020); (*compare* Compl. ¶¶ 2–9, 17–70, 71–87, *with* SAC ¶¶ 2–9, 15–63, 66–69, 71–82).  The Court relies on that summary here without repeating it.

Young, now deceased, filed his Complaint on September 8, 2016,[4] asserting seven claims: violation of constitutional rights, brought under 42 U.S.C. section 1983, against the County (Count I) (*see* Compl. ¶¶ 94–101); violation of constitutional rights, brought under section 1983, against the Co-Defendants (Count II) (*see* Compl. ¶¶ 102–08); disability-based discrimination in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. section 12131 *et seq.*, against the County (Count III) (*see* Compl. ¶¶ 109–22); negligence against the County (Count IV) (*see id.* ¶¶ 123–35); battery against Officers Glover, Walker, Thompson, and Jones (Count V) (*see id.* ¶¶ 136–40); false imprisonment against Officers Glover, Walker, Thompson, Diaz, and Jones (Count VI) (*see id.* ¶¶ 141–46); and civil conspiracy against Defendants (Count VII) (*see id.* ¶¶ 147–55).  On April 21, 2020, the Court entered an Order dismissing Counts I, II, III, IV, VI, and VII but granted Young leave to amend.  *See Young*, 2020 WL 2110012, at *4–11.

---

[4] On November 18, 2016, the Court entered an Order [ECF No. 20] staying the case pending the completion of the State Attorney and the Miami-Dade Corrections and Rehabilitations Department Professional Compliance Bureau investigations.  (*See generally id.*).  The Court entered an Order [ECF No. 56] reopening the case on February 14, 2020.

Following the Suggestion of Death Upon the Record, Plaintiff filed the Second Amended Complaint on October 14, 2020, asserting five claims on Young's behalf: violation of constitutional rights, brought under section 1983, against the County (Count I) (*see* SAC ¶¶ 137–56); violation of constitutional rights, brought under section 1983, against the Co-Defendants (Count II) (*see* SAC ¶¶ 157–70); battery against Officers Glover, Walker, Thompson, and Jones (Count III) (*see id.* ¶¶ 171–76); negligence against the County (Count IV) (*see id.* ¶¶ 177–84); and negligence against Officer Diaz, Corporal Cox, and Lieutenant Johnson (Count V) (*see id.* ¶¶ 185–94). Defendants move to dismiss Counts I and II for failure to comply with the pleading requirements of Federal Rules of Civil Procedure 8(a) and 10(b); and Counts I, II, IV, and V for failure to state claims for relief under Rule 12(b)(6).[5] (*See generally* Mot.).

## II.  STANDARDS

### A.  Federal Rule of Civil Procedure 8(a)

Rule 8(a) requires a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2) (alteration added). Although this pleading standard "does not require 'detailed factual allegations,' [] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); other citation omitted). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (alteration added; citation omitted).

---

[5] Defendants do not seek dismissal of Plaintiff's battery claim (Count III). (*See* Mot. 4). The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

**B.  Federal Rule of Civil Procedure 10(b)**

Rule 10(b) states "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading.  If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense."  Fed. R. Civ. P. 10(b) (alterations added).  The Rule "requires the pleader to present the claims in a discrete and succinct manner so that the opponent can discern what is being claimed and frame a responsive pleading."  *Michel v. Sec. All. of Fla., LLC*, No. 11-21127-Civ, 2011 WL 3878354, at *4 (S.D. Fla. Sept. 2, 2011) (quotation marks and citations omitted).

**C.  Federal Rule of Civil Procedure 12(b)(6)**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (alteration added; quoting *Twombly*, 550 U.S. at 570).  Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (alteration added; quoting *Twombly*, 550 U.S. at 555).  Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  *Twombly*, 550 U.S. at 555 (alteration added; citation omitted).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (alteration added; citing *Twombly*, 550 U.S. at 556).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss."  *Sinaltrainal v. Coca-Cola Co.*,

578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012).

When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

## III.    DISCUSSION

Defendants contend the Court must dismiss Count I (section 1983 claim against the County); Count II (section 1983 claim against the Co-Defendants); Count IV (negligence claim against the County); and Count V (negligence claim against Officer Diaz, Corporal Cox, and Lieutenant Johnson.  (*See generally* Mot.; Reply).  The Court addresses each count in turn.

### A.  Count I – Section 1983 Claim against the County

Count I asserts a section 1983 claim against the County for violation of Plaintiff's rights under the Fourth, Eighth, and Fourteenth Amendments.  (*See* SAC ¶¶ 137–56).  Plaintiff's claim seeking municipal liability pivots on the County's (1) "practice of using excessive and retaliatory force against inmates housed in correctional facilities owned and/or operated by" the County (*id.* ¶ 142); (2) "practice of failing to provide adequate acute medical care to inmates housed in correctional facilities owned and/or operated by [the County] including, following the use of excessive and retaliatory force" (*id.* ¶ 145 (alteration added)); (3) "practice of using excessive and retaliatory force against inmates with mental health issues, housed in correctional facilities owned and/or operated by" the County (*id.* ¶ 148); and (4) "practice of failing to provide . . . adequate mental health services or other programming appropriate to the needs of prisoners confined to mental health units" (*id.* ¶ 151 (alteration added)).

To start, the County contends Count I is an improper shotgun pleading that entirely fails to abide by Rules 8(a) and 10(b) and thus must be dismissed. (*See* Mot. 4–6). The County insists Count I "merges four separate theories of liability, and then premises each of those theories of [sic] the very same set of facts, without providing any indications which facts support which theory." (*Id.* 5). According to the County, "[p]leadings like this are flatly forbidden because they are calculated to confuse the enemy, and the [C]ourt[.]" (*Id.* 6 (alterations added; quotation marks omitted)). The Court disagrees.

Count I is not a shotgun pleading.[6] Count I states a cognizable basis for liability as to the County, and there is no indication the County does not have adequate notice of the claims being asserted against it. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim . . . alternatively or hypothetically, either in a single count . . . or in separate ones." (alterations added)). The Second Amended Complaint is clear and logically organized; it also provides the County enough information to understand which factual allegations are intended to support which claims for relief. (*See* Resp. 6 (providing apt observation: "The Motion makes it very clear [] [the County] understands the claims being made against it as well as the facts of the [Second Amended Complaint] supporting each claim." (alterations added))). Simply put, Count I satisfies the standards of Rules 8(a) and 10(b).

---

[6] The Eleventh Circuit "ha[s] identified four rough types or categories of shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). The four categories are: (1) complaints containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before it; (2) complaints replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) complaints that do not separate into a different count each cause of action or claim for relief; and (4) complaints that assert multiple claims against multiple defendants without specifying which defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. *See id.* at 1321–23 (footnote call numbers omitted).

CASE NO. 16-23852-CIV-ALTONAGA/Goodman

The County next contends Plaintiff fails to state a basis for section 1983 municipal liability. (*See* Mot. 6–21). Counties can be held liable for violating a plaintiff's constitutional rights under section 1983. *See generally Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The Supreme Court, however, "has placed strict limitations on municipal liability under [section] 1983." *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (alteration added). To impose section 1983 municipal liability, a plaintiff must show: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citation omitted); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) ("[A] municipality can be found liable under [section] 1983 only where the municipality *itself* causes the constitutional violation at issue." (alterations added; emphasis in original)).

A plaintiff has two methods to establish a county's policy: "identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech*, 335 F.3d at 1329 (citations omitted). "Because a county rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs . . . must show that the county has a custom or practice of permitting it and that the county's custom or practice is the moving force behind the constitutional violation." *Id.* at 1330 (alteration added; other alteration adopted; quotation marks and citations omitted); *see also DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1307 n.21 (11th Cir. 2019) (identifying ways a plaintiff may show a municipal liability's policy or custom (citation omitted)). Under either theory, a plaintiff must show the county "has authority and responsibility over the governmental function in issue and must also identify those officials who speak with final

policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue." *Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 819 (11th Cir. 2017) (quotations marks and citation omitted).

To prove section 1983 liability based on an unofficial custom or policy, "a plaintiff must establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law[.]" *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (alteration added; quotation marks and citations omitted). "[A] municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy if the municipality tacitly authorizes these actions or displays deliberate indifference towards the misconduct." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001) (alteration added; quotation marks and citation omitted). A plaintiff must plead the county "had subjective knowledge of a risk of serious harm and consciously disregarded that risk by engaging in conduct that is more than mere negligence." *Andrade v. Miami Dade Cnty.*, No. 09-23220-Civ, 2011 WL 4345665, at *8 (S.D. Fla. Sept. 16, 2011) (quotation marks and citations omitted). Further, to demonstrate a custom or policy, it is generally necessary that a plaintiff "show a persistent and wide-spread practice[;] . . . [n]ormally random acts or isolated incidents are insufficient to establish a custom or policy." *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986) (alterations added; citation omitted).

The County presents several arguments in support of its request for dismissal of Count I, but the Court remains unpersuaded. (*See* Mot. 6–21). The Court explains why.

CASE NO. 16-23852-CIV-ALTONAGA/Goodman

The County first contends Plaintiff cannot rely on the Consent Agreement,[7] the Miami-Dade County Jail Settlement Agreement ("Settlement Agreement") [ECF No. 108-5], and the various monitor reports (*see* SAC ¶¶ 83–130) to plead *Monell* liability.  (*See* Mot. 9–12).  The County maintains Plaintiff is "flatly prohibited" from seeking to establish liability against the County based on the agreements and monitor reports because "[t]he [a]greements provide [] they are not an admission of liability, were settled to avoid the risks and burdens of litigation, do not confer any rights on third parties, do not alter or expand the County's liability, and cannot be used to seek relief against [the] County except by the [Department of Justice ("DOJ")]."  (*Id.* 9 (alterations added; emphasis omitted)).  The County insists the Court must refuse to consider paragraphs 80 through 130, 143, 146, 149, 152, and 181 through 183 of the Second Amended Complaint for purposes of whether Plaintiff states a claim.  (*See id.* 11).

On this point, *Estate of Roman v. City of Newark*, 914 F.3d 789 (3d Cir. 2019), is illuminating.  In *Roman*, the plaintiff's *Monell* claims alleged the city had a pattern or practice of constitutional violations and failed to train, supervise, and discipline its officers, based in part on a consent decree[8] between the DOJ and the city that pertained to police misconduct.  *See id.* at

---

[7] *See United States v. Miami-Dade Cnty.*, No. 13-cv-21570, Consent Agreement [ECF No. 5-2] (S.D. Fla. May 1, 2013).

[8] The consent decree in *Roman* contains similar language to that in the agreements here regarding the "explicit prohibition on [its] use."  (Reply 7 (alteration added); *see id.* (taking issue with the fact "none of [Plaintiff's] cases contain agreements with explicit prohibition on their use." (alteration added)); *compare* Mot. 8 ("Th[e] [Settlement] Agreement neither constitutes an admission by the County of the truth of the findings contained in the Findings Letter, nor constitutes an admission of liability by the County." (alterations added)); *id.* ("No person or entity is intended to be a third-party beneficiary of th[e] [Consent] Agreement for purposes of any civil, criminal, or administrative action.  Accordingly, no person or entity may assert any claim or right as a beneficiary or protected class under this [Consent] Agreement.  This [Consent] Agreement is not intended to impair or expand the right of any person or entity to seek relief against the County or its officials, employees, or agents, for their conduct." (alterations added; emphasis omitted))), *with Roman v. City of Newark*, No. 16-cv-1110, Consent Decree [ECF No. 23-4] 5 (D.N.J. Sept. 9, 2016) ("The City and [Newark Police Division] do not admit to the allegations of the complaint.  Nothing in this Agreement will be construed as an acknowledgment, agreement, admission, statement, or evidence of liability of the City, [Newark Police Division], or any of its officers or officials under 42 U.S.C. [section]

797, 799.  After viewing the pleading and properly associated documents, the Third Circuit held

the plaintiff adequately stated failure-to-train and unconstitutional custom claims.  *See id.* at 799–

802.

The court determined the consent decree "fortifie[d]" the plaintiff's "allegations of

unlawful custom because it acknowledge[d] a pattern or practice of conduct by the Newark Police

[Department] that deprive[d] individuals of rights, privileges, and immunities secured by the

Constitution."  *Id.* at 799 (third alteration in original; quotation marks and citation omitted).  In

doing so, the court rejected the defendants' contention that the consent decree was "inadmissible

settlement material[,]" stating the plaintiff "need not provide admissible proof at the motion-to-

dismiss stage."  *Id.* at 796 (alteration added; other alterations adopted; quotation marks and

citations omitted).  The Court finds *Roman* persuasive and will consider Plaintiff's allegations that

pertain to the Consent Agreement, Settlement Agreement, and the various monitor reports.[9]  (*See*

SAC ¶¶ 80–130, 143, 146, 149, 152, 181–83).[10]

---

14141." (alterations added)); *id.* 73 ("This Agreement is enforceable only by the Parties.  No person or entity is intended to be a third-party beneficiary of the provisions of this Agreement for purposes of any civil, criminal, or administrative action.  Accordingly, no person or entity may assert any claim or right as a beneficiary or protected class under this Agreement.").

[9] The County maintains "Federal Rule of Evidence 407 prohibits the use of subsequent remedial measures [— the DOJ settlements —] to show culpable conduct or a need for warning or instruction." (Mot. 11 (alteration added; quotation marks omitted)).  The Court will not entertain the County's evidentiary objections at the motion-to-dismiss stage.

 The County also contends "[b]oth common sense and the Eleventh Circuit tell us that complaints resulting in settlement are not evidence of constitutional violations sufficient to establish municipal liability under *Monell*." (*Id.* 11 n.5 (alteration and italics added; citing *Simmons v. Bradshaw*, 879 F.3d 1157, 1168 (11th Cir. 2018) (an appeal from various motions before and after trial))).  Yet Plaintiff need only raise a plausible inference of municipal liability, not prove it.  *Cf. Osterhoudt v. City of New York*, No. 10 cv 3173, 2012 WL 4481927, at \*2 (E.D.N.Y. Sept. 27, 2012) ("While plaintiff's citations to pending lawsuits and settlement agreements will not suffice to overcome summary judgment they do permit a plausible inference of deliberate indifference." (alteration adopted; quotation marks and citations omitted)).

[10] Alternatively, the County asks the Court to strike paragraphs 80 through 130, 143, 146, 149, 152, and 181 through 183 of the Second Amended Complaint, stating the Court "must enforce both the [a]greements and [the district court's] order adopting the [C]onsent [A]greement." (Mot. 11 (alterations added)).  Under

CASE NO. 16-23852-CIV-ALTONAGA/Goodman

The County next argues Plaintiff's allegations fail to establish unconstitutional conduct widespread or persistent enough to constitute unofficial customs, policies, or practices.[11, 12]   (*See* Mot. 8–9, 12–17).   According to the County, Plaintiff presents "nothing more than sweeping generalities[,] unsupported specific factual allegations of past excessive force incidents or other incidents of similar misconduct."   (*Id.* 13 (alteration added)).   The County insists Plaintiff simply sets forth conclusory allegations that recite the elements of a *Monell* claim.   (*See id.* 13–17).   The County is mistaken.

Quite simply, Plaintiff sufficiently alleges the existence of county policies or customs to withstand the County's Rule 12(b)(6) challenge.   The Second Amended Complaint (1) specifies the exact customs, policies, or practices that resulted in a violation of Young's constitutional rights (*see* SAC ¶¶ 142–53); (2) states the County's customs, policies, or practices constituted deliberate

---

Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."   Fed. R. Civ. P. 12(f) (alteration added). The allegations the County asks the Court to strike are neither redundant, immaterial, impertinent, nor scandalous.   The sections of the Second Amended Complaint related to the DOJ agreements are material and pertinent to Plaintiff's claim because, as Plaintiff correctly notes (*see* Resp. 13, 16), the agreements are relevant to show the County had (or has) unconstitutional policies or customs.   The Court will not strike these allegations.   *See Martin v. City of Portland*, No. 3:19-cv-1647, 2020 WL 363391, at *7 (D. Or. Jan. 21, 2020) (declining to strike portions of the complaint related to a DOJ investigation and report because they were material and pertinent to the plaintiff's *Monell* claim as they tended to show the city had an unconstitutional custom or policy).

[11] The Court notes Plaintiff does not purport to establish liability based on an official County policy.   (*See* Mot. 8 n.3; *see also generally* Resp.).

[12] As to the first element of Plaintiff's municipal liability claim — a violation of constitutional rights — the County "assumes [] Plaintiff has alleged a violation of [Young's] rights . . . with respect to excessive force only but no other theory of [section] 1983 liability."   (Mot. 8 n.2 (alterations added)).   Regarding customs two (*see* SAC ¶¶ 145–46) and four (*see id.* ¶¶ 151–52), the County maintains "it is highly doubtful Plaintiff has [] alleged underlying constitutional violations . . . for these policies[,]" incorporating by reference arguments expressed in part II of Defendants' Motion (Mot. 17 (alterations added)).   The Court will not sift through the briefing to find arguments and citations that potentially apply to these customs or policies.   In any event, Plaintiff alleges Young "languish[ed] in pain for days" in his cell after the beating (SAC ¶ 146 (alteration added)), and Defendants failed to provide him with medical care in the face of a patently obvious serious medical need (*see, e.g., id.* ¶¶ 50, 53, 146–47) and failed to provide detainees with adequate mental health services to prevent the alleged assault (*id.* ¶¶ 151–52).   Plaintiff adequately alleges underlying constitutional violations for which the County could be held liable.

indifference to Young's constitutional rights (*see id.* ¶¶ 72, 130, 154); (3) provides context — in expansive detail — why the Co-Defendants' use of excessive force and failure to provide adequate medical (or mental health) care implicate Young's constitutional rights and why the County played a role in such violations for which it should be held liable (*see id.* ¶¶ 66–130); (4) identifies prior instances in which similar constitutional violations were alleged to have occurred at the County's detention centers (*see id.* ¶¶ 71, 74, 75, 77, 78, 94–96, 126, 131); (5) explains the County's Mayor and Board of Commissioners were aware of the alleged constitutional deprivations and failed to take timely action to curb the alleged deeply embedded misconduct regarding correctional officers' use of excessive force and failure to provide adequate medical (or mental health) care at the Detention Center (*see id.* ¶ 155); and (6) bolsters the allegations with a discussion of the Consent Agreement, the Settlement Agreement, various monitor reports, newspaper articles, and other evidence (*see id.* ¶¶ 66–131). These allegations against the County are enough to satisfy element two — that the County had customs or policies that constituted deliberate indifference[13] to Young's constitutional rights — of Plaintiff's *Monell* claim.

The County further contends Plaintiff fails to allege an unofficial policy or custom that was the moving force behind the alleged constitutional violations. (*See* Mot. 20–21; Reply 9–10). Again, the Court disagrees. Plaintiff cites several of the County's customs, policies, or practices that she alleges were the moving force behind the constitutional violations (*see* SAC ¶¶ 142, 145,

---

[13] The County says its settlement with the DOJ in 2013 negates any deliberate indifference. (*See* Mot. 17–20). According to the County, Plaintiff "[a]t worst, [] has alleged a delay in implementing the County's policies by subordinate officials, a very far cry from deliberate indifference." (*Id.* 19 (alterations added)). But Plaintiff points "to at least minimal evidence that, at the time of the incident, it was too early to declare 'Mission Accomplished.'" *Walker v. City of Newark*, No. cv 19-16853, 2020 WL 3542502, at *12 (D.N.J. June 30, 2020), *as amended* (July 1, 2020) (allowing section 1983 excessive force claim to proceed even though the city was in the process of addressing its inadequate practices or customs pursuant to a consent decree at the time of the plaintiff's injury; emphasizing "[w]e are at the stage of pleading, not proof." (alteration added)). In short, Plaintiff sufficiently alleges deliberate indifference for purposes of surviving Defendants' Motion. (*See, e.g.*, SAC ¶¶ 72, 96, 100, 120, 130, 154).

148, 151); describes a history of the County's customs, policies, or practices that led to Young's injury (*see id.* ¶¶ 66–131); and alleges Young's injury was a direct and proximate result of these policies, customs, or practices (*see id.* ¶¶ 143, 146, 149, 152, 156).  Stated differently, Plaintiff draws a causal connection between the constitutional harms Young suffered and the alleged County customs, policies, or practices.

In short, because the allegations of the Second Amended Complaint assert facts that make Plaintiff's *Monell* claim plausible, the Court denies Defendants' Motion as to Count I.

## B.  Count II – Section 1983 Claim against Co-Defendants

Count II asserts a section 1983 claim against the Co-Defendants.[14]  (*See* SAC ¶¶ 157–70).  "[T]he first step in any [section] 1983 analysis requires identification of the precise right that is alleged to have been violated."  *Alcocer v. Mills*, 906 F.3d 944, 947 (11th Cir. 2018) (alterations added).  "Different rights prescribe different legal analyses, so accurately diagnosing the right at issue is critical to properly analyzing a [section] 1983 plaintiff's claims."  *Id.* (alteration added).  Plaintiff alleges a violation of Young's rights under the First, Fourth, Eighth, and Fourteenth Amendments.[15]  (*See* SAC ¶¶ 157–70).  The Court addresses each asserted claim.

---

[14] At the outset, Defendants argue Count II is a shotgun pleading because "it does not specify the specific constitutional right each [Co-D]efendant violated and it further does not identify which facts support a violation of [] that right by each [Co-D]efendant[]."  (Mot. 22 (alterations added)).  To this, Plaintiff contends "Count II alleges specific allegations against each of the [Co-]Defendants, giving them clear notice of the Constitutional rights Plaintiff alleges each violated and the factual basis for those alleged violations."  (Resp. 20 (alterations added)).  The Court agrees with Plaintiff.  Plaintiff specifically identifies which Defendant is alleged to have done certain acts at multiple places in the Second Amended Complaint.

[15] Young was a pretrial detainee at the time of the alleged assault.  (*See* SAC ¶¶ 16, 61).  "While the Fourth Amendment prevents the use of excessive force during arrest, and the Eighth Amendment serves as the primary source of protection against excessive force after conviction, it is the Fourteenth Amendment that protects those who exist in the in-between — pretrial detainees."  *Piazza v. Jefferson Cnty., Ala.*, 923 F.3d 947, 952 (11th Cir. 2019) (citations omitted).  This distinction, however, does not matter for purposes of ruling on the present Motion.  *See, e.g.*, *Watkins v. Pinnock*, 802 F. App'x 450, 461 (11th Cir. 2020) (stating "the Fourth Amendment objective-reasonableness inquiry is nearly identical to the Fourteenth Amendment standard"); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306 (11th Cir. 2009) (explaining pretrial detainee's

***First Amendment retaliation claim***.  Plaintiff asserts a First Amendment retaliation claim under section 1983 against Lieutenant Johnson and Corporal Cox.  (*See* SAC ¶ 169).  "Retaliation against the exercise of First Amendment rights is a well-established basis for section 1983 liability." *O'Boyle v. Sweetapple*, 187 F. Supp. 3d 1365, 1370 (S.D. Fla. 2016) (citations omitted). "The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003) (citation omitted). "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (citation omitted).  To state a First Amendment claim of retaliation, an inmate must establish: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Id.* (citation and footnote call number omitted).

Plaintiff alleges Lieutenant Johnson and Corporal Cox's "conduct [] constitutes retaliation for [Young]'s attempt at filing a grievance in violation of his First Amendment right to free speech and petition the government for a redress of grievances."  (SAC ¶ 169 (alterations added)). Plaintiff states: (1) Young requested that Corporal Cox place him in protective custody to protect him from further assaults (*see id.* ¶ 44); (2) Lieutenant Johnson listened to Young's story and walked away (*see id.*); (3) Corporal Cox advised Young he would receive protective custody (*see id.* ¶ 45); (4) Officer Jones told Young "see, you in my house" (*id.* ¶ 48 (alteration adopted; quotation marks omitted)) and refused to feed Young lunch that day (*see id.* ¶ 49); and (5) Young

---

"claims are subject to the same scrutiny as if they had been brought as deliberate indifference claims under the Eighth Amendment." (citation and footnote call number omitted)).

remained in his cell in the C Wing for two or three days (*see id.* ¶ 53).  (*See* Resp. 28).

Plaintiff fails to plead the third element — a causal connection between the request for protective custody and the alleged retaliation.[16]  Plaintiff's retaliation claim arises from *Officer Jones's* refusal to feed him lunch on the day Young requested protective custody and a general allegation Young remained in his cell for two or three days.  (*See id.* (citing SAC ¶¶ 48–49, 53)). As Defendants correctly note, Plaintiff's "factual allegations fall well short of showing that either [Corporal] Cox or [Lieutenant] Johnson knew that Officer Jones intended to retaliate against [Young] in that manner, had the ability to prevent the retaliation, and were deliberately indifferent toward it."  (Mot. 28 (alterations added)).  Nor can Plaintiff merely label Corporal Cox or Lieutenant Johnson's actions "retaliat[ory]" to draw a sufficient causal link between Officer Jones's[17] actions and Young's protective speech.  (SAC ¶ 169 (alteration added)); *see Mpaka v. Jackson Mem'l Hosp.*, 827 F. App'x 1007, 1010 (11th Cir. 2020) (affirming dismissal of First Amendment retaliation claim where the plaintiff's allegations did not show retaliation on the defendant's part).  Plaintiff's retaliation claim against Lieutenant Johnson and Corporal Cox is dismissed.

***Failure-to-intervene claim***.  Plaintiff asserts a claim against Officer Diaz based upon his failure to intervene during Officer Walker and an unidentified officer's alleged use of excessive force.  (*See* SAC ¶¶ 30–36, 164).  "[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable

---

[16] The undersigned assumes Plaintiff adequately alleges Young's speech was constitutionally protected, and that Corporal Cox or Lieutenant Johnson's conduct would have deterred Young from engaging in that speech.

[17] To this, Plaintiff responds that "[a]fter hearing [Young's] grievance[,]" Corporal Cox conferred with Officer Jones and thereafter, Young was subject to retaliation.  (Resp. 28 (alterations added)).  Yet Plaintiff alleges "Corporal Cox sp[oke] with Officer Walker[,]" not Officer Jones.  (SAC ¶ 46 (alterations added)).

for his nonfeasance." *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir. 2007) (alteration added; quotation marks and citations omitted). "This liability, however, only arises when the officer is in a position to intervene and fails to do so." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000). "Instances of force that occur within seconds do not place officers in a realistic position to intervene." *Johnson v. White*, 725 F. App'x 868, 878 (11th Cir. 2018).

Defendants insist "there are no allegations [] Officer Diaz was in a position to intervene and intentionally failed to do so[,]" characterizing Plaintiff's allegations as "a broad and general assumption." (Mot. 26 (alterations added)). Defendants' position makes little sense. Plaintiff alleges Officer Diaz was "at the door outside of the cell" when the other officers "punched" Young, "struck him" in the ribs and face, "kneed" him in the sternum, "dragged" him, and "lifted him up off of his feet and violently slammed him into the floor where [Young] landed on his head, neck and shoulder." (SAC ¶¶ 31, 34–36 (alteration added)).[18] Plaintiff further states Officer Diaz was "present at the time of the attack with the ability to prevent it" but "fail[ed]" to do so. (*Id.* ¶¶ 163–64 (alteration added)). Plaintiff presents facts showing Officer Diaz can be liable for failing to intervene and thus, the claim may proceed.

---

[18] The Court summarized the relevant allegations in its prior Order:

> Officers Glover, Walker, Diaz, and an unidentified officer approached the cell.
>
> Officer Walker and the unidentified officer entered the cell and cornered [Young]. Officer Walker yelled "Fu** you nig***, you gonna flood the cell?" and then proceeded to punch [Young] in the face. [Young] curled into the fetal position to prevent further strikes. Undeterred by [Young's] position, Officer Walker struck [Young] four to five more times in [his] ribs and face, while also kneeing [Young] in the sternum. Both officers then lifted [Young] off his feet and violently slammed his head, neck, and shoulder into the floor. The officers exited the cell, leaving [Young] balled up on the floor.

*Young*, 2020 WL 2110012, at *2 (alterations added; quoting and citing Compl. ¶¶ 33–40); (*compare* SAC ¶¶ 31–36, *with* Compl. ¶¶ 33–40). These allegations are not "a broad and general assumption." (Mot. 26).

***Failure-to-protect and failure-to-report claims***.  Plaintiff alleges Officer Diaz, Lieutenant Johnson, and Corporal Cox (1) "fail[ed] [to] protect [Young] from further harm or retaliation after the attack (which resulted in [Young] being denied food and suffering extreme and unnecessary pain until he was finally transported for emergency surgery 7 days after the attack);" and (2) "fail[ed] to promptly report the attack to [their] superiors and law enforcement or properly document that attack" in violation of Young's constitutional rights.  (SAC ¶ 164 (alterations added); *see also id.* ¶ 168).  Plaintiff's claims largely hinge on these two allegations, both of which are far too conclusory to state failure-to-report and failure-to-protect claims.

First, the failure-to-protect claim based on future harm or retaliation.  Plaintiff fails to allege Officer Diaz, Lieutenant Johnson, and Corporal Cox subjectively knew that Young was in danger of *future harm or retaliation*; nor does Plaintiff present facts to infer the existence of *future harm or retaliation* or that these officials knew of and disregarded this future risk to Young's safety.[19]  *See, e.g.*, *Khalees v. Harden*, No. 20-11966, 2020 WL 7017847, at *1 (11th Cir. Sept. 4, 2020) ("To establish a failure-to-protect claim, the plaintiff must allege that a substantial risk of

---

[19] Plaintiff contends Lieutenant Johnson and Corporal Cox "hear[d] [Young's] complaint concerning the beating and then did nothing to prevent Young's continued abuse at the hands of the rest of [] the Co-]Defendants."  (Resp. 25 (alterations added)).  In support, and like the First Amendment retaliation claim, Plaintiff cites Officer Jones's refusal to feed Young lunch on the day Young requested protective custody and a general allegation Young remained in his cell for two or three days.  (*See id.* 25–26 (citing SAC ¶¶ 48–49, 53)).  These allegations are insufficient for Plaintiff to proceed on her failure-to-protect claim against Lieutenant Johnson and Corporal Cox, neither of whom is alleged to have knowledge of Officer Jones's further harm or retaliation (*see* SAC ¶¶ 48–49), or is alleged to be responsible for cell assignments (*see id.* ¶ 53).  (*See also* Mot. 28 (observing "there are no allegations that anyone used force against [Young] after he spoke to [Corporal] Cox and [Lieutenant] Johnson overheard part of that conversation." (alterations added))).

 To the extent Plaintiff seeks to impose liability on Lieutenant Johnson and Corporal Cox based solely on their supervisory roles at the Detention Center (*see* Resp. 25 (emphasizing their supervisory roles)), the mere fact of supervisor capacity is not enough; rather Plaintiff must "show that the supervisor either participated directly in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation[,]" *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (alteration added; citation omitted).  Plaintiff fails to state a failure-to-protect claim against Lieutenant Johnson and Corporal Cox on this basis.

serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to that risk." (alteration adopted; quotation marks and citation omitted)); *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013) (explaining that to state a failure-to-train claim, a plaintiff must allege facts showing a substantial risk of serious harm; the defendants' deliberate indifference to that risk; and causation (citation omitted)).

Second, the failure-to-report claim. Plaintiff provides no factual allegations (or explanation in her Response) regarding how Officer Diaz, Lieutenant Johnson, and Corporal Cox's failure to report excessive force that had already occurred constitutes a violation of Young's constitutional rights. *See, e.g.*, *White v. Ironwood State Prison*, No. 2:20-cv-02738, 2020 WL 3978068, at *4 (C.D. Cal. May 6, 2020) (noting the "[f]ailure to report and discipline a correctional officer for use of excessive force after the incident occurred is not a violation of the Eighth Amendment, because it did not cause, or contribute to, the use of excessive force." (alteration added; collecting cases)); *Perez v. Steele*, No. 5:17-cv-113, 2018 WL 10323027, at *6 (N.D. Tex. Jan. 31, 2018) (stating as a general rule that "a police officer's failure to report another officer's use of allegedly excessive force does not constitute an actionable constitutional claim." (collecting cases)).

Accordingly, Plaintiff's failure-to-report and failure-to-protect claims are dismissed.

***Deliberate-indifference-to-serious-medical-needs claim***. Plaintiff asserts the Co-Defendants were deliberately indifferent to Young's serious medical needs.[20] (*See* Resp. 26–25).

_____

[20] As to Officers Glover, Walker, Thompson, and Jones, Plaintiff *only* alleges: "[These Defendants] each intentionally made unlawful and harmful physical contact with [Young] in violation of his right to be secure in his person against unreasonable seizures as protected by the Fourth Amendment to the Constitution, his right to not be subject to cruel and unusual punishment as protected by the Eighth Amendment to the Constitution and his right to due process guaranteed by the Fourteenth Amendment to the Constitution." (SAC ¶ 161 (alterations added)). Stated differently, Plaintiff states Officers Glover, Walker, Thompson, and Jones's use of excessive force violated Young's Fourth, Eighth, and Fourteenth Amendment rights. Plaintiff does not allege a deliberate-indifference-to-serious-medical-needs claim against these Defendants. Because "a Plaintiff may not amend a complaint via a response to a motion to dismiss[,]" *Guerrero v. Target Corp.*, 889 F. Supp. 2d. 1348, 1355–56 n.6 (S.D. Fla. 2012) (alteration added; citations omitted),

CASE NO. 16-23852-CIV-ALTONAGA/Goodman

To make out a claim of deliberate indifference to a serious medical need, a plaintiff must allege "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009) (citation omitted). "To succeed on a claim of deliberate indifference in the medical context, a plaintiff must satisfy an extremely high standard." *Stewart v. Lewis*, 789 F. App'x 825, 828 (11th Cir. 2019); *see also Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) ("A prisoner bringing a deliberate-indifference claim has a steep hill to climb.").

"A deliberate-indifference claim entails both an objective and a subjective component." *Keohane*, 952 F.3d at 1266 (citation omitted). "First, the inmate must establish 'an objectively serious medical need' — that is, 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' — that, 'if left unattended, poses a substantial risk of serious harm.'" *Id.* (quoting *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)). "Second, the inmate must prove that prison officials acted with deliberate indifference to that need by showing (1) that they had 'subjective knowledge of a risk of serious harm' and (2) that they 'disregarded' that risk (3) by conduct that was 'more than mere negligence.'" *Id.* (alteration adopted; quoting *Brown*, 387 F.3d at 1351). "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (citation omitted).

---

the Court declines the parties' invitation to address whether Plaintiff states a claim against Officers Glover, Walker, Thompson, and Jones for deliberate indifference to Young's serious medical needs.

Defendants contend Plaintiff fails to state a claim of deliberate indifference to serious medical needs against Officer Diaz, Lieutenant Johnson, and Corporal Cox.  (*See* Mot. 23–29; Reply 11–12).  The Court addresses each Defendant.  *See Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) (noting "[e]ach individual [d]efendant must be judged separately and on the basis of what that person knows." (alterations added; footnote call number omitted)).

First, Officer Diaz.  Defendants' argument is reduced to one sentence: "There are no allegations to indicate Officer Diaz had subjective knowledge of [Young's] medical condition." (Mot. 26 (alteration added)).  This argument is unavailing.

Plaintiff alleges Officer Diaz witnessed other officers (1) punch Young in the face; (2) strike him with fists in his ribs and face 4 or 5 times; (3) knee Young in the sternum; (4) drag him to the center of the cell; and (5) violently slam Young on his head, neck, and shoulder, leaving him balled up on the floor.  (*See* SAC ¶¶ 34–36).  "The fact [] [Plaintiff] does not assert that [Officer Diaz] had subjective knowledge of [Young's] precise injury — [internal bleeding] — only means that [Officer Diaz] was unaware of a specific diagnosis[;] [i]t does not mean that []he was not subjectively aware of the need to provide some medical assistance[,]" especially given the allegation Officer Diaz witnessed a beating severe enough to allegedly cause internal bleeding.[21] *Whipple v. Johnson*, No. 3:16-cv-936, 2018 WL 4146134, at *9 (M.D. Fla. Aug. 30, 2018)

---

[21] In other parts of their briefing, Defendants highlight the fact that a doctor visited Young the same day of the incident.  (*See* Mot. 25, 28–29; *see also* SAC ¶¶ 50, 52 ("Later that day, [Young] was visited by a[] [Detention Center] doctor . . . [who] left without giving [Young] any of the promised pain medication." (alterations added))).  The Court is unpersuaded that a *visit* (not treatment) by a doctor later in the day renders Plaintiff's claim against Officer Diaz implausible, especially since Plaintiff alleges Young suffered intolerable pain due in part to the delay in medical treatment (which Officer Diaz contributed to) after the beating.  (*See* SAC ¶¶ 162–64); *see also Clark v. Sheffield*, 807 F. App'x 910, 915–16 (11th Cir. 2020) ("We are hesitant to conclude that a doctor was deliberately indifferent when a prisoner receives medical care.  But for some emergency injuries . . . even a few hours [sic] delay in receiving treatment can constitute deliberate indifference." (alteration added; citations omitted)); *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999) ("A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, [or] delaying care, . . . cause a prisoner to needlessly suffer [] pain . . . ." (alterations added)).

(alterations added; citation omitted); *see also id.* at *8–9 (finding the plaintiff stated a deliberate indifference claim even though the defendant was not aware of the precise injury because "a jury could conclude that [the defendant] knew of a substantial risk from the very fact that the risk was obvious based on the beating she witnessed." (alteration added; quotation marks and citation omitted)). Plaintiff's deliberate-indifference-to-serious-medical-needs claim may proceed against Officer Diaz.

Second, Lieutenant Johnson. Defendants contend Plaintiffs' allegation that "Lieutenant Johnson approached and listened to [Young]'s story and then walked away" is insufficient to state a deliberate indifference claim against Lieutenant Johnson. (Mot. 27 (quotation marks omitted; quoting SAC ¶ 44)). Plaintiff refuses to address this argument (other than to repeat the allegations of the Second Amended Complaint). (*See* Resp. 24–27).

The Court sides with Defendants. Plaintiff's allegation that Lieutenant Johnson listened to Young's story provides no indication about what Lieutenant Johnson heard or witnessed; nor has Plaintiff alleged facts to suggest Lieutenant Johnson subjectively knew of Young's serious medical needs and disregarded them. Further, Plaintiff does not allege Lieutenant Johnson had an individual encounter with Young or that he witnessed any use of force against Young. Simply put, overhearing Young's "story of the beating" (SAC ¶ 44) is not enough to state a claim of deliberate indifference to serious medical needs. This claim against Lieutenant Johnson is dismissed.

Third, Corporal Cox. Defendants correctly argue Plaintiff does not present sufficient factual averments to state a claim of deliberate indifference to serious medical needs against Corporal Cox. (*See* Mot. 27–29). The relevant allegations are: (1) Young "asked Corporal Cox for protective custody to protect him from further beatings from the correctional officers . . . [and] recount[ed] the story of the beating[;]" (2) "Corporal Cox said 'you want protective custody? Ok.

I'm going to put you in protective custody' and walked away[;]" and (3) Corporal Cox spoke with "Officer Walker and [] said 'ok, alright' and left the C Wing." (SAC ¶¶ 44–46 (alterations added; other alterations adopted)).

These allegations likewise are insufficient to plead deliberate indifference. Critically, Young's primary complaint to Corporal Cox was the beating and the need for protective custody, not the need for immediate medical care or his urgent medical condition. Plaintiff's facts do not allow the Court to draw a reasonable inference that Corporal Cox knew of, but deliberately disregarded, any serious medical need. Plaintiff, once again, provides no meaningful opposition that these allegations against Corporal Cox are not enough to demonstrate a deliberate indifference claim. (*See* Resp. 26–27). This claim against Corporal Cox is dismissed.

*Recap*. The Court determines Plaintiff states section 1983 claims of: excessive use of force against Officers Glover, Walker, Thompson, and Jones;[22] failure to intervene against Officer Diaz; and deliberate indifference to serious medical needs against Officer Diaz. The claims against Lieutenant Johnson and Corporal Cox in Count II are dismissed. All other claims against Officers Glover, Walker, Thompson, Jones, and Diaz are dismissed.

## C. Count IV – Negligence against the County

In Count IV, Plaintiff asserts a negligence claim against the County. (*See* SAC ¶¶ 177–84). Under Florida law, a negligence claim has four elements: (1) "[a] duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks[;]" (2) "[a] failure on the defendant's part to conform to the standard required: a breach of the duty[;]" (3) "[a] reasonably close causal connection between the conduct and the resulting injury[;]" and (4) "[a]ctual loss or damage."

---

[22] Defendants concede Plaintiff states a claim of excessive use of force against Officers Glover, Walker, Thompson, and Jones. (*See* Mot. 31).

*Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003) (alterations added; other alterations adopted; citation omitted).

The County first contends Plaintiff's negligence claim is barred by the four-year statute of limitations because "this negligence theory is an entirely new theory than the one in the initial complaint[.]" (Mot. 30 (alteration added)).  The Court disagrees.

"Federal Rule of Civil Procedure 15(c) governs relation back of amendments to pleadings in federal court, and provides several ways in which an amended pleading can relate back to an original pleading." *Saxton v. ACF Indus., Inc.*, 254 F.3d 959, 962 (11th Cir. 2001).  Otherwise time-barred claims relate back to the filing date of an earlier complaint if the amended complaint "asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." *Ferretti v. NCL (Bahamas) Ltd.*, No. 17-cv-20202, 2018 WL 1449201, at *2 (S.D. Fla. Mar. 22, 2018) (alteration added; quoting Fed. R. Civ. P. 15(c)(1)(B)).  The "critical issue" in relation-back determinations "is whether the original complaint gave notice to the defendant of the claim now being asserted." *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993) (citing *Woods Expl. & Producing Co., Inc. v. Aluminum Co. of Am.*, 438 F.2d 1286, 1299–1300 (5th Cir. 1971)).  "'When new or distinct conduct, transactions, or occurrences are alleged as grounds for recovery, there is no relation back, and recovery under the amended complaint is barred by limitations if it was untimely filed.'" *Id.* (quoting *Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563, 1566 (5th Cir. 1985)).

The Court finds the negligence claim against the County relates back to the original complaint.  All of Plaintiff's pleadings rely on the same events and facts.  In this regard, even the County agrees: "[t]he [Second Amended Complaint] is largely duplicative of the Amended

Complaint[;[23]]" and "[t]he factual allegations in the Amended Complaint regarding the underlying incident were virtually identical to those in the initial Complaint."  (Mot. 2–3 (alterations added)).  Plaintiff's amendments simply seek to clarify her negligence claim; said differently, the negligence claim restates the original claim with greater particularity.  It cannot be reasonably argued (but unnecessarily is) that the County did not have fair notice of the negligence claim against it.  Plaintiff's negligence claim is not time-barred.

The County next contends Plaintiff's: (1) "first [negligence] theory is totally vague and is not supported by specific facts tied to this incident[;]" (2) "second and third [negligence] theories sound in medical negligence and are therefore barred because the [Second Amended Complaint] does not allege satisfaction with conditions precedent[;]" and (3) "fourth [negligence] theory implicates planning level decisions, and brings this claim within the ambit of the County's sovereign immunity."[24]  (Mot. 31 (alterations added; quotation marks and citations omitted)).  The County gives short shrift to these points (literally only three brief sentences with no legal analysis).[25]  The Court treats these contentions similarly, in one sentence with minimal analysis:

---

[23] (*See* Am. Compl. [ECF No. 84]).

[24] The County also argues Plaintiff "puts forward no [] facts to support [her] negligence claim" and relies on the "inadmissible . . . DOJ settlement and monitor reports[.]"  (Mot. 30 (alterations added)).  The County's contentions are unavailing for two reasons.  First, as explained, the Court does consider at the motion-to-dismiss stage allegations that pertain to the Consent Agreement, Settlement Agreement, and the various monitor reports.  Second, the Court is hard-pressed to conclude Plaintiff's factual narrative of over 100 paragraphs, most of which contain specific details, is not putting forward enough facts to support a negligence claim.

[25] The County's failure to develop these arguments may be due to the 30-page limitation set forth in the October 19, 2020 Order.  (*See generally id.*).  However, Defendants — not anyone else — made the tactical decision to dedicate more time and effort to strings of citations of general rule statements and propositions that add little (if any) value to their Motion.  (*See* Mot. 8–9, 13–14, 18–19, 25); *see also Hirsch v. Neven*, No. 2:12-cv-00625, 2020 WL 1638442, at *1 n.1 (D. Nev. Apr. 2, 2020) ("Longer page limits merely invite . . . string citation, . . . which waste[s] judicial resources." (alterations added)); *Emanuel v. Neven*, No. 2:16-cv-01368, 2020 WL 1451191, at *1 n.1 (D. Nev. Mar. 25, 2020) (same); *Perez v. Nevada*, No. 2:14-cv-02087, 2019 WL 4757789, at *11 (D. Nev. Sept. 30, 2019) (same); *Weldon v. Bartow Cnty. Bd. of Educ.*, No. Civ. A. 4:06-cv-29, 2006 WL 1627130, at *2 (N.D. Ga. June 6, 2006) ("String citations to district court

The Court is unpersuaded, and thus, Count IV may proceed.

**D. Count V – Negligence against Officer Diaz, Corporal Cox, and Lieutenant Johnson**

In Count V, Plaintiff asserts a negligence claim against Officer Diaz, Corporal Cox, and Lieutenant Johnson.  (*See* SAC ¶¶ 185–94).  As noted, a negligence claim requires duty, breach, causation, and damages.  *See Clay Elec. Co-op., Inc.*, 873 So. 2d at 1185 (citation omitted).

Defendants argue in a single paragraph that Count V is barred: (1) "by the statute of limitations[;]" (2) "because the allegations . . . lack plausible factual support[;]" (3) "by Fl[orida] Stat[ute] [section] 768.29(9)(a)[26] because a mere negligence action may not be maintained against the individual employees of a political subdivision of the State[;]" and (4) by "[s]overeign immunity . . . under state law."  (Mot. 31 (alterations added; citing other portions of the Motion; and providing string of citations with no analysis)).  Defendants do not develop these contentions,[27] and the Court "will not address th[ese] perfunctory and underdeveloped argument[s]."  *U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (alterations added; collecting cases).

---

decisions . . . are [] unpersuasive . . . when the reasoning behind those statements [is] not given. (alterations added)).

[26] Section 768.28(9)(a) states, in part:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

*Id.*  The Court notes "whether each Defendant officer acted in bad faith, with malicious purpose, or in a manner exhibiting wanton or willful disregard of human rights, safety, or property, is a question for the trier of fact."  *Hazleton v. City of Orlando*, No. 6:10-cv-342, 2010 WL 11507191, at *4 (M.D. Fla. Aug. 10, 2010) (citation omitted).

[27] Defendants provide more particular arguments in their Reply but that is too little, too late.  (*See* Reply 15).  A reply brief is for replying, not for developing (or raising) arguments for the first time.  *See In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived." (citations omitted)).

Nor will the Court comb through Defendants' Motion in search of arguments that apply to Plaintiff's negligence claim against Officer Diaz, Corporal Cox, and Lieutenant Johnson.

In short, Count V may proceed.

### E.   Leave to Amend

Plaintiff requests leave to amend her Second Amended Complaint.  (*See* Resp. 31).  Under Federal Rule of Civil Procedure 15(a), leave to amend a complaint "shall be freely given when justice so requires."  *Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984) (quotation marks and citations omitted).  "The decision whether to grant leave to amend is within the sound discretion of the trial court."  *Jameson v. Arrow Co.*, 75 F.3d 1528, 1534 (11th Cir. 1996) (citation omitted).  Plaintiff's operative Complaint is her third pleading in this case; and the Court warned Plaintiff of her final opportunity to amend.  (*See* Oct. 6, 2020 Order [ECF No. 105]; *see also* Compl.; Am. Compl.; SAC).  Allowing Plaintiff to amend her Complaint a fourth time would cause Defendants undue prejudice and thus, the Court denies Plaintiff's request.  *See, e.g.*, *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008).

## IV.   CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendants, Miami-Dade County, Leon Glover, Rickey Walker, Leonardo Diaz, Collesta Thompson, Calvin Jones, Gina Cox, and Elvin Johnson's Motion to Dismiss **[ECF No. 112]** is **GRANTED in part** and **DENIED in part**.  The Motion is **DENIED** as to Counts I, IV, and V.  The Motion is **GRANTED in part** as to Count II as follows: the excessive use-of-force claim against Officers Glover, Walker, Thompson, and Jones; the failure-to-intervene claim against Officer Diaz; and the deliberate-indifference-to-serious-medical-needs claim against Officer Diaz may proceed.  All other claims in Count II are dismissed without prejudice and without leave to amend.

CASE NO. 16-23852-CIV-ALTONAGA/Goodman

Defendants have until and including **January 5, 2021** to file answers to Plaintiff's Second

Amended Complaint **[ECF No. 108].**

      **DONE AND ORDERED** in Miami, Florida, this 21st day of December, 2020.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record